IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ULTRA CLEAN HOLDINGS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> TFG -CALIFORNIA, L.P., a Utah limited partnership, and TETRA FINANCIAL GROUP, L.L.C., a Utah Limited Liability Company, <br><br> Defendants. | ORDER and <br> MEMORANDUM DECISION <br><br> Case No. 2:09-cv-904 CW |

In this action, Plaintiff Ultra Clean Holdings ("Ultra Clean") has sued Defendants TFG-California, L.P. and Tetra Financial Group, L.L.C. ( collectively "Tetra") for breach of contract and conversion. Now before the court are cross motions for summary judgment. In these motions, Ultra Clean seeks a judgment in its favor on the breach of contract claim, and Tetra seeks judgment in its favor on both claims. For the reasons set forth below, the court GRANTS in part and DENIES in part Ultra Clean's motion for summary judgment and DENIES in part and MOOTS in part Tetra's motion for summary judgment.

## BACKGROUND

On December 8, 2008, Ultra Clean and Tetra signed a Letter of Intent for a sale and lease-back financing transaction, the terms of which the parties defined as the "Proposal." Under the Proposal, Tetra was to finance up to $7.5 million in equipment that would be leased back to Ultra Clean for a term of 36 months. The parties selected Utah law to govern disputes. The Proposal was amended on December 30, 2008 to reduce the term to 24 months and to require that Ultra Clean pay a security deposit of 15% of the cost of the equipment.

Under the Proposal, Ultra Clean was required to pay Tetra a deposit of $25,000 for Tetra to conduct additional due diligence to approve the financing. Ultra Clean paid that deposit on December 8, 2008, the same day the parties executed the Proposal. The Proposal further required that Ultra Clean pay an additional amount of $188,000 within five days of Tetra giving final credit approval. The amount of the combined $25,000 and $188,000 ($213,000) was determined based on the expected base monthly rent of the lease. Tetra granted final credit approval to Ultra Clean on January 21, 2009, but Ultra Clean did not pay $188,000 within five days as the Proposal required. The parties nevertheless continued, apparently without objection by Tetra, to work toward completing the sale/lease back financing.

The Proposal required Ultra Clean to execute Tetra's "standard lease documentation" including a Master Lease Agreement and schedules, "reflecting generally the terms and conditions of this Proposal." (Letter of Intent, Dkt. No. 2-2, at p. 2.) Tetra sent Ultra Clean its standard lease documents on January 27, 2009. For reasons that are not fully presented on the record, the documents were not executed at that time. Over the next several months, the parties engaged in negotiations over the terms of the lease, the equipment schedules and other documents necessary to complete the transaction. The amount to be financed was ultimately reduced from $7.5 million to $4.8 million. As a source of funding for the lease, Tetra obtained a commitment for Republic Bank, which was good for 90 days from January 23, 2009. The Proposal, however, was not conditioned upon funding to Tetra being available from Republic Bank.

Tetra and Ultra Clean ultimately agreed on the form of the documentation necessary to

complete the transaction papers on April 28, 2009.[1] Ultra Clean signed and returned those documents to Tetra, but Tetra did not execute them. There is no evidence before the court of why Tetra did not sign the documents nor of any communication to Ultra Clean that Tetra would not do so. Consistent with the terms the parties reached in their agreement, Ultra Clean provided Tetra with authorization to withdraw funds from Ultra Clean's bank account to make the monthly lease payments. Pursuant to this authority, on May 5, 2009, Tetra withdrew $145,712.50 from Ultra Clean's bank account. On May 11, 2009, Tetra removed an additional $2,609.25 from Ultra Clean's bank account. These withdrawn funds were the payment that was to have been made within five days of Tetra giving credit approval, adjusted to reflect the base monthly rental for the reduced loan amount that had been negotiated.

As these events unfolded, Republic Bank became concerned about Ultra Clean's financial performance. On May 18, 2009, Republic Bank notified Tetra that it would not fund the lease, based on Republic Bank's understanding of Ultra Clean's financial performance in the first quarter of 2009.

Tetra ultimately did not sign the documents that Tetra acknowledges it had agreed upon on April 28. Instead, on May 27, 2009, Tetra sent Ultra Clean revised transaction documents. In those proposed documents, Tetra increased the required security deposit from 15% to 40% of the cost of the equipment. Ultra Clean refused to accept the changes. On June 1, 2009 Ultra Clean revoked the Proposal in writing and demanded the return of the money it had paid to Tetra. Tetra has refused to refund the money. Tetra asserted to Ultra Clean that under the Proposal, the

---

[1] Ultra Clean's Statement of Fact No. 20 reads: "On April 28 after Ultra Clean and Tetra had agreed upon the form of the documentation, Ultra Clean signed the transaction documents and returned them to Tetra." (Ultra Clean's Memo. in Support of SJ, Dkt. No. 18, at p. v.) Tetra responds, "Undisputed." (Tetra's Combined Memo., Dkt. No. 26, at p. vii.)

money is a non-refundable fee to compensate Tetra for the costs of due diligence and underwriting and the loss of the use of Tetra's funds for other transactions.

## ANALYSIS

**I.      Summary Judgment Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on the issue; "[t]he mere existence of a scintilla of evidence ... will be insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252 (1986).

When the parties file cross motions for summary judgment, the court "is entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts." *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir.2000) (citations omitted). Moreover, "the denial of one [cross motion] does not require the grant of another [cross motion]." *Buell Cabinet v. Sudduth*, 608 F.2d 431, 433 (10th Cir.1979).

**II.     Ultra Clean is Entitled to a Return of Funds under the Proposal**

Whether the money paid by Ultra Clean to Tetra is refundable is governed by the language of the Proposal. The governing language provides:

> **Reliance on Commitment**: Prior to issuing a commitment, Lessor will perform additional due diligence in connection with the Lease and will initiate such due diligence upon receipt from Lessee of a deposit in an amount equal to $25,000.00 which is equal to one-half the Base Monthly Rental (the "Initial Deposit"). Upon final credit approval, Lessee will provide the remaining deposit amount of $188,000.00 within 5 business days. Said deposit will then total 1 full Base Monthly Rental. This **Proposal shall be firm and irrevocable for thirty (30) business days**

4

> **from the date of receipt by Lessor of all documentation and information required by Lessor (the "Review Period"). If Lessor does not accept this Proposal within the Review Period and Lessee revokes this Proposal in writing, Lessee's Initial Deposit will be returned, without interest.** If Lessor accepts this Proposal within the Review Period, the Initial Deposit shall become nonrefundable. The Initial Deposit shall either (I) be applied as prepayment of the final Base Monthly Rental payment;. or (ii) if Lessee does not enter into the lease for any reason, the Initial Deposit shall be deemed a processing fee fully earned by Lessor, and not a penalty, as consideration of and liquidated damages for Lessor's· time, effort and expense in considering. and· responding to Lessee's Proposal. This sum is intended to compensate Lessor for Lessor's administrative and other costs in processing and approving this Proposal, and has been agreed on by Lessee and Lessor as a reasonable estimate of the administrative and other costs which will be incurred by Lessor in connection herewith.

(Letter of Intent, Dkt. No. 2-2, at p. 4, emphasis added.)

Under this provision, the funds Ultra Clean paid as the "Initial Deposit" are non-refundable unless Tetra does not accept the Proposal during within 30 days of the Proposal becoming "irrevocable." The Proposal becomes irrevocable upon "the date of receipt by Lessor of all documentation and information required by Lessor (the 'Review Period')." (*Id.*) The Proposal does not expressly define "all documents and information" necessary to satisfy this requirement. Tetra admits, however, that by April 28, 2009 the parties had agreed upon the form of all documentation. Neither side has argued or presented evidence suggesting that after April 28, Tetra required any further documents or information from Ultra Clean to complete the transaction. To the contrary, the parties' agreement on the forms tends to show that Tetra acknowledged that no additional documents or information was needed as of that date. Moreover, because this record is on cross motions by the parties, the court assumes that the parties have provided the court all relevant evidence on this issue.

For these reasons, the court finds that it is undisputed that Tetra had all of the required

documents and information by April 28. The Proposal was therefore irrevocable for the following 30-day "Review Period" that ended on May 28. Thus, under the governing language, if (1) Tetra did not accept the Proposal during this Review Period and (2) Ultra Clean revoked the Proposal in writing, Tetra was required to return the "Initial Deposit. . . without interest."[2] (*Id.*) There is no question that on this record, the "Initial Deposit" was made up of the $25,000 initial payment plus the two withdrawals for $145,712.50 and $2,609.25.

It is undisputed that Tetra failed to sign the agreed upon documents by May 28. Instead, on May 27, 2009 Tetra sent Ultra Clean revised documents requiring a substantially increased security deposit. By making a counter proposal that changed a material term of Ultra Clean's offer, Tetra rejected Ultra Clean's offer. *See*, *Nunley v. Westates Casing Servs., Inc.*, 989 P.2d 1077, 1087 (Utah 1999) (a demand to modify an offer is a rejection of the offer). Under the governing language of the Proposal, such a rejection constitutes a failure to accept the Proposal.[3] It is also undisputed that on June 1, 2009, Ultra Clean responded to the counterproposal by revoking the Proposal in writing. Because Tetra sign the agreed documents by May 28 and because Ultra Clean revoked the Proposal, Tetra was required to return the deposit. Tetra has not

---

[2] As mentioned, the parties do not dispute that Ultra Clean failed to pay Tetra $188,000 within five days after final credit approval, which appears to be a breach of the Proposal. The court finds, however, that Tetra waived this requirement. This waiver occurred when Tetra acted upon Ultra Clean's authorization to withdraw the reduced amounts based upon the adjusted amount to be financed. Tetra not only accepted this reduced amount, it gave instructions to Ultra Clean's bank to transfer the funds.

[3] Tetra contends that it "accepted" the Proposal by executing the Letter of Intent and that the 30 days started to run on December 8, 2008. This interpretation is not supported by the face of the Proposal itself, which suggests that the 30 day period would start to run at some future date after Tetra received additional due diligence materials. Tetra's interpretation is also not supported by the record, which shows that the parties continued to negotiate terms for several months after signing the Proposal. These continued talks suggests that the parties understood that something more than merely signing the Letter of Intent setting out the Proposal would be required to "accept" the Proposal as that term was used in the Letter of Intent.

done so. Ultra Clean is therefore entitled to summary judgment in its favor on its breach of contract claim.

In addition seeking the return of the money it paid to Tetra, Ultra Clean moves for an award of 10% interest from June 1, 2009 to date. This additional relief is precluded by the plain language of the Proposal, which states that the "Initial Deposit" shall be returned "without interest." (Letter of Intent, Dkt. No. 2-2, at p. 4.) Accordingly, Ultra Clean is awarded a total of $173,321.75 on its breach of contract claim, with no interest.

Because Ultra Clean prevailed on its contract claim, its claim for conversion is moot. Tetra's motion for summary judgment on this claim is thus also moot. In any event, Ultra Clean's conversion claim would have been precluded by Ultra Clean's authorization for Tetra to withdraw the funds pursuant to the Proposal.

## CONCLUSION AND ORDER

For the foregoing reasons, the court orders as follows:

Ultra Clean's motion for summary judgment (Dkt. No. 17) is GRANTED in part and DENIED in part as to the breach of contract claim. Ultra Clean is AWARDED a total of $173,321.75 on its breach of contract claim, with no pre-award interest.

TFG and Tetra's motion for summary judgment (Dkt. No. 25) is DENIED as to the breach of contract claim and MOOT as to the conversion claim.

SO ORDERED this 23rd day of August, 2011.

BY THE COURT:

_____
Clark Waddoups
United States District Judge